## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | NO.  09-531-1 |
| | : | |
| CARLOS DIAZ and | : | |
| LUIS FIGUEROA | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                     **September 4, 2013**

Carlos Diaz, who was convicted by a jury of conspiracy to commit robbery,[1] Hobbs Act robbery[2] and using a firearm during a crime of violence,[3] has filed a *pro se* motion under 28 U.S.C. § 2255. He argues that his trial counsel was ineffective because he failed to conduct an investigation to locate potential witnesses and video footage that might have supported an alibi defense, and for failing to impeach the victim's identification testimony.  He also reasserts his claim that his suppression motion was erroneously denied.

After reviewing the record, we conclude that Diaz's trial counsel was not ineffective.  Also, because his suppression hearing challenge was previously litigated before the Third Circuit, it is not cognizable under § 2255.  Therefore, we shall deny his motion.

---

[1] 18 U.S.C. § 1951(a).

[2] 18 U.S.C. §§ 1951(a) and 2.

[3] 18 U.S.C. §§ 924(c)(1) and 2.

**Factual and Procedural History**[4]

On October 16, 2008, at approximately 9:30 p.m., two men attempted to rob Keith Prout in a parking lot at 3800 Aramingo Avenue in Philadelphia, Pennsylvania. Their efforts were thwarted by the unexpected arrival of police, but not before they assaulted the victim for several minutes.

After closing the store he managed, Prout discovered his truck had a flat tire.  Because he was in a high-crime neighborhood, Prout got inside his truck after noticing two suspicious-looking men walking from the side of the store.  The two men, who approached from the back of the truck, mentioned that one of the tires was flat.  Prout moved the truck to a brighter spot in the parking lot to change the tire.  The two men followed.

As Prout was changing the tire, he was grabbed from behind and a gun was shoved into his ribs. The two robbers demanded that he reopen the store and unlock its safe.  Prout refused.  The robbers became more aggressive, pushing him against the back of the truck. The heavier of the two, later identified as Diaz, was wearing a camouflage vest and a dark baseball cap.  His face was not covered during the robbery.

Diaz, who did most of the talking during the armed robbery, asked Prout if he had a family and whether he ever wanted to see his family again.  He asked whether Prout was willing to die rather than open the safe.  As Prout struggled, Sergeant Brian Spearman of the Philadelphia Police Department arrived on the

---

[4] The factual and procedural background is recited in more detail in our findings of fact on the denial of his suppression motion (Doc. No. 50) and in the Third Circuit's opinion in *United States v. Diaz*, 444 F. App'x. 551, 553-54 (3d Cir. 2011).

scene. Prout quickly informed the officer that the other man had a gun. Both men fled.

By the time Sergeant Jonah Conway arrived, one suspect was already in custody. Conway began looking for the other robber. As he drove behind the shopping center, he observed a Ford Explorer with a Washington State license plate parked in an overgrown lot by unused railroad tracks.

Suspecting that the Explorer was connected to the attempted robbery, Conway punctured one of the tires to disable the vehicle. He then took up a surveillance position. Within a few minutes, he saw a man emerge from the weeds along the tracks, get into the Explorer and attempt to drive away. Conway stopped the Explorer and requested the driver's license and registration. The driver, Diaz, was unable to produce either. When asked why he was there, Diaz, who obviously did not know that Conway had flattened his tire, stated that when he noticed that his tire was low, he parked the vehicle and walked to a gas station to call his father. Conway saw that Diaz was sweating, out of breath, and nervous.

As Conway was questioning Diaz, Prout arrived at the scene in a police car. He immediately identified Diaz as one of the men who had assaulted him. Diaz was placed in handcuffs. Prout then repeated to the police that Diaz was one of his attackers. Diaz was placed under arrest.

After a four-day jury trial, Diaz was convicted. He was later sentenced to a prison term of 180 months, the mandatory minimum sentence. He appealed to

the Third Circuit, which affirmed the judgment of conviction. *United States v. Diaz*, 444 F. App'x 551, 553, *cert. denied*, 132 S. Ct. 861 (2011).

## Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are evaluated under the familiar two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111 (2009). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 687–89. Second, if there was deficient performance, the petitioner must show that it prejudiced his defense. *Id.* at 691–92. The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the results of the proceedings would have been different. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* In other words, the prejudice component focuses on whether counsel's deficient performance renders the result of the proceedings unreliable or the proceeding fundamentally unfair. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

Counsel's performance is deficient only where the defendant can show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Where counsel's conduct falls within the wide range of reasonable professional assistance under the circumstances, it is presumed to be sound strategy. *Id.* at 689.

The performance analysis starts with the presumption that counsel's conduct was part of a sound strategy. This "weak" presumption can be rebutted by showing either that the conduct was not part of a strategy or was part of an unsound strategy. *Thomas v. Varner*, 428 F.3d 491, 499–500 (3d Cir. 2005). Where the record does not explicitly reveal trial counsel's actual strategy or the lack of one, the presumption may be rebutted only by a showing that no sound strategy could have supported the conduct. *Id.* at 500. Where counsel's conduct was part of a strategy devised after an investigation of the law and the facts, "the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.' " *Id.* (quoting *Strickland*, 466 U.S. at 690).

"[O]vercoming the strategic presumption does not, in itself, entitle [the defendant] to relief. It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct." *Id.* at 501. In other words, the petitioner still must establish that counsel's performance was objectively unreasonable.

To satisfy the prejudice component, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 502 (quoting *Strickland*, 466 U.S. at 694). The prejudice standard is not "a stringent one." *Id.* (quoting *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005)). The defendant "need not show that counsel's deficient performance more likely than not altered the outcome in the case–rather, he must show only a probability sufficient to

5

undermine confidence in the outcome." *Id.* at 502 (citations and internal quotation marks omitted).

Diaz claims his trial counsel failed to investigate whether there were any witnesses or video cameras at a nearby BP gas station that may have shown he was there at the time of the robbery. He also contends it may have shown that he was not wearing the coat and hat that a police officer found in the weeds from which Conway had seen him emerge.

Diaz does not identify any witnesses that could have been called in his defense. Nor does he state that there was a video recording. He claims that his attorney did not attempt to discover whether there were any witnesses or a video. He does not assert that he ever told his counsel that he was not wearing the hat and coat found by the police or that he requested counsel to search the BP gas station for evidence.

In assessing counsel's investigation decisions, what the defendant told counsel is critical. *Strickland*, 466 U.S. at 691. Consequently, inquiry into attorney-client conversations are significant. If the defendant did not inform his attorney of the identity and/or location of witnesses or the content of any video footage known to him, counsel's performance cannot be deficient. In other words, counsel must have a reason to look for witnesses. He cannot be faulted for not looking for someone he does not know may exist.

Diaz has not identified any witnesses or what they may have said that would have assisted him. In short, Diaz's failure to investigate argument rests on

sheer speculation. *See Zettlemoyer v. Fulcomer*, 923 F. 2d 284, 298 (3d Cir. 1991); *Lewis v. Mazurkiewicz,* 915 F. 2d 106, 113-14 (3d Cir. 1990).

Diaz also faults his trial counsel's cross-examination of Prout. He argues that counsel failed to impeach Prout with his prior testimony at the preliminary hearing. Diaz does not explain how his trial counsel was deficient during the cross-examination. Diaz has pointed to no inconsistencies in Prout's testimony. In fact, the testimony at the preliminary hearing, which Diaz attached to his motion, does not reflect any significant material differences between Prout's preliminary hearing testimony and his trial testimony.

Diaz also seems to argue that the government knowingly relied on "false" testimony. He contends that Prout's preliminary hearing testimony varied from his trial testimony. Given this variance, according to Diaz, the government knew or should have known Prout's trial testimony was false. We reiterate that there is no material contradiction in Prout's testimony. Hence, this argument is devoid of any merit.

### Suppression Motion

As he did on appeal to the Third Circuit, Diaz challenges the denial of his suppression motion. He attempts to re-litigate issues that he presented to the appellate court which rejected his arguments. *See United States v. Diaz*, 444 F. App'x 551, 557 (3d Cir. 2011). He cannot make these same arguments again in a § 2255 motion. *Davis v. United States*, 417 U.S. 333, 342 (1974); *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993).

## Certificate of Appealability

A certificate of appealability may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Diaz has not done so. Thus, a certificate of appealability will be denied.